UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------------x
TRUSTEES OF THE PAVERS AND ROAD BUILDERS
DISTRICT COUNCIL WELFARE, PENSION,
ANNUITY AND APPRENTICESHIP, AND SKILL
IMPROVEMENT AND SAFETY FUNDS,

                                Plaintiffs,

       -against-

KEL-TECH CONSTRUCTION INC.,

                                Defendant.
-------------------------------------------------------------x

**REPORT &
RECOMMENDATION**
19-CV-2487-ENV-SJB

**BULSARA, United States Magistrate Judge:**

       Plaintiffs, Trustees of the Pavers and Road Builders District Council Welfare,

Pension, Annuity and Apprenticeship, Skill Improvement and Safety Funds (the

"Trustees"), commenced this action on April 26, 2019 against Kel-Tech Construction

Inc. ("Kel-Tech") pursuant to sections 502(a)(3) and 515 of the Employment Retirement

Income Security Act of 1974 ("ERISA") and section 301 of the Labor Management

Relations Act of 1947 (the "LMRA") to recover delinquent contributions allegedly owed

to the Pavers and Road Builders District Council Welfare, Pension, Annuity and

Apprenticeship, Skill Improvement and Safety Funds (the "Funds"), in addition to union

assessments, interest, liquidated damages, audit costs, and attorney's fees and costs.

(Compl. dated Apr. 26, 2019, Dkt. No. 1).  Kel-Tech failed to answer or otherwise

respond to the Complaint.  On August 21, 2019, the Clerk of the Court entered a default

against Kel-Tech.  (Certificate of Default dated Aug. 21, 2019 ("Certificate of Default"),

Dkt. No. 9).  On September 11, 2019, the Trustees moved for a default judgment against

Kel-Tech (the "Motion for Default Judgment").  (Mot. for Default J. dated Sept. 11, 2019

("Pls.' Mot."), Dkt. No. 11).  The Honorable Eric N. Vitaliano referred the motion to the

undersigned on September 13, 2019 for a report and recommendation. (Order Referring Mot. dated Sept. 13, 2019).

For the reasons outlined below, the Court respectfully recommends that the Motion for Default Judgment be granted and interest, damages, and attorney's fees and costs be awarded as detailed herein.

## FACTUAL BACKGROUND AND PROCEDURAL HISTORY

The Pavers and Road Builders District Council Welfare, Pension, Annuity and Apprenticeship, Skill Improvement and Safety Funds (the "Funds"), administered at 17-20 Whitestone Expressway, Suite 200, Whitestone, New York, are employee benefit plans within the meaning of section 3(3) of ERISA, 29 U.S.C. § 1002(3). (Compl. ¶ 4). They are operated in accordance with the LMRA, 29 U.S.C. § 186(c). (*Id.*). The Funds' respective boards of trustees (the "Trustees") have brought this suit on their behalf. (*Id.* ¶¶ 1, 4).

Kel-Tech, a construction company, is an employer within the meaning of section 3(5) of ERISA, 29 U.S.C. § 1002(5), and an employer affecting commerce under section 501 of the LMRA, 29 U.S.C. § 142. (*Id.* ¶ 5). Its principal place of business is 12-11 Redfern Avenue, Far Rockaway, New York. (*Id.*).

Kel-Tech is party to a collective-bargaining agreement (the "CBA") with the Highway Road and Street Construction Laborers Local Union 1010 of the District Council of Pavers and Roadbuilders of the Laborers' International Union of North America AFL-CIO (the "Union") for the period July 1, 2012, to June 30, 2015. (*Id.* ¶ 6; Decl. of Joseph Montelle in Further Supp. of Pls.' Mot. for Default J. dated July 20, 2020 ("Montelle Decl. II"), Dkt. No. 20, ¶ 9; Agreement Between the Union and the Employer July 1, 2012–June 30, 2015 ("CBA"), attached as Ex. 2 to Montelle Decl. II,

Dkt. No. 20).  The CBA was never signed.  (*See* CBA at 32; *see generally* Decl. of
Adrianna R. Grancio in Further Supp. of Pls.' Mot. for Default J. ("Grancio Decl. II"),
Dkt. No. 19).  However, Kel-Tech submitted regular remittance reports to the Funds
between July 3, 2013, and June 30, 2015 (the "Remittance Reports").  (Montelle Decl. II
¶ 5; Remittance Reports, attached as Ex. 1 to Montelle Decl. II, Dkt. No. 20).  The
remittance reports submitted from July 3, 2013, to July 5, 2014, state that Kel-Tech
"ratifies and approves the terms of the [CBA]."  (Montelle Decl. II ¶ 6).  Similarly, the
remittance reports submitted from July 28, 2014, to June 30, 2015, state that Kel-Tech
"ratifies, approves and adopts the terms and conditions of the [CBA]."  (*Id.* ¶ 7).

Pursuant to the CBA, Kel-Tech was required to make certain fringe benefit
contributions to the Funds and withhold certain dues check-offs and union assessments
(collectively, "union assessments") and remit them to the Union.  (CBA art. IX, §§ 1, 4).
Kel-Tech was also required to comply with certain reporting requirements and any
requests in connection with an audit by the Trustees.  (*See* CBA arts. IX(c) (reporting),
XII (audits)).

In the event of a breach of these provisions, Kel-Tech is obligated to pay: (1) the
delinquent contributions; (2) interest on the unpaid contributions from the date of
delinquency until the date of payment, at a yearly interest rate of ten percent;
(3) liquidated damages of ten percent; (4) reasonable audit and collection expenses; and
(5) attorney's fees and costs.  (Policy for Collection of Delinquent Fringe Benefit
Contributions ("Collection Policy"), attached as Ex. C to the Declaration of Joseph
Montelle in Supp. of Default J. dated Sept. 4, 2019 ("Montelle Decl. I"), Dkt. No. 13, art.
II, ¶ 5, art. IV, ¶ 8).  These obligations are set forth in a policy promulgated by the
Trustees, the "Policy for Collection of Delinquent Fringe Benefit Contributions" (the

"Collection Policy"), created pursuant to a series of trust agreements (the "Trust Agreements"), which empower the Trustees "[t]o establish the policy and the rules pursuant to which [the CBA and Funds] are to be operated and administered, including rules relating to the collection of contributions and other payments." (Compl. ¶¶ 13–15; Am. and Restated Agreement and Decl. of Trust of the Pavers and Road Builders District Council Annuity Fund, attached as Ex. B to the Montelle Decl. I, art. V, § 3(b); Am. and Restated Agreement and Decl. of Trust of the Pavers and Road Builders District Council Apprenticeship Skill Improvement and Safety Fund, attached as Ex. B to the Montelle Decl. I, art. V, § 3(b); Am. and Restated Agreement and Decl. of Trust of the Pavers and Road Builders District Council Pension Fund, attached as Ex. B to the Montelle Decl. I, art. V, § 3(b); Am. and Restated Agreement and Decl. of Trust of the Pavers and Road Builders District Council Welfare Fund dated Jan. 19, 2006, attached as Ex. B to the Montelle Decl. I, art. V, § 3(b) (collectively, the "Trust Agreements")). These Trust Agreements are incorporated by reference into the CBA and bind Kel-Tech. (Compl. ¶ 12 ("The Employer is bound by all of the terms and conditions of the Agreements and Declarations of Trust with respect to the [Funds], which . . . are hereby made part of this [CBA] and are incorporated herein."); CBA art. IX, § 1(b)).

Pursuant to their rights under the CBA, Plaintiffs conducted an audit of Kel-Tech's payroll records for the period of July 1, 2013, through June 30, 2015. (Compl. ¶ 17). The audit revealed that Kel-Tech failed to make $2,105.60 in fringe benefit contributions and $146.57 in union assessments. (*Id*. ¶ 18; Decl. of Robert Castiglia in Supp. of Default J. dated Sept. 6, 2019 ("Castiglia Decl."), Dkt. No. 14, ¶¶ 4–5, 7–8). The Trustees also incurred $1,027 in audit costs. (Compl. ¶ 18; Castiglia Decl. ¶ 12). Kel-Tech has failed to pay these amounts. (Compl. ¶ 19).

4

On April 26, 2019, the Trustees commenced this action against Kel-Tech.  (*See* Compl.).  The Complaint alleges violations of section 515 of ERISA, 29 U.S.C. § 1145, (*id.* ¶¶ 23–29), and breach of the CBA in violation of section 301 of the LMRA, 29 U.S.C. § 185, (*id.* ¶¶ 30–33).

Kel-Tech was served with a summons and Complaint on May 2, 2019 via the Office of the Secretary of State of New York.  (Aff. of Service dated May 2, 2019 ("Executed Summons"), Dkt. No. 5).  Kel-Tech failed to respond, and on August 21, 2019, at the Trustees' request (Req. to Clerk for Certificate of Default dated Aug. 13, 2019), the Clerk of the Court issued a certificate of default as to Kel-Tech (Certificate of Default).  On September 11, 2019, the Trustees moved for default judgment.  (Pls.' Mot.).  Kel-Tech was served with a copy of the motion and accompanying papers at its last known business address, 12-11 Redfern Avenue, Far Rockaway, New York, pursuant to Local Rule 55.2(c).  (Aff. of Service dated Sept. 11, 2019 ("Default J. Service"), Dkt. No. 17).

On July 1, 2020, this Court issued an order directing the Plaintiffs to, *inter alia*, provide copies of the CBA.  (Order dated July 1, 2020).  Plaintiffs filed three additional declarations on July 21, 2020 in response, and they served Kel-Tech with these documents at its last known business address.  (Certificate of Service dated July 28, 2020 ("Default J. Suppl. Service"), Dkt. No. 22).

Plaintiffs' motion seeks judgment against Kel-Tech in the amount of $11,745.19, which consists of: (1) $2,105.60 in delinquent contributions; (2) $146.57 in union assessments; (3) $1,027 in audit fees; (4) $782.52 in late-payment interest; (5) $1,179.14 in interest on unpaid contributions plus accrued interest through the date of entry of final judgment; (6) $210.56 in liquidated damages; and (7) $6,293.80 in attorney's fees

and costs.  (*See* Declaration of Adrianna Grancio ("Grancio Decl. I"), Dkt. No. 16, ¶ 21; Mem. of Law in Supp. of Pls.' Mot. for Default J. (Pls.' Mem."), Dkt. No. 16, at 7–8).  For the reasons stated below, the motion should be granted.

DISCUSSION

I.    Entry of Default Judgment

"Rule 55 of the Federal Rules of Civil Procedure establishes a two-step process for a plaintiff to obtain a default judgment."  *See Shariff v. Beach 90th St. Realty Corp.*, No. 11-CV-2551, 2013 WL 6835157, at *3 (E.D.N.Y. Dec. 20, 2013) (adopting report and recommendation).  First, "[w]hen a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend, and that failure is shown by affidavit or otherwise, the clerk must enter the party's default."  Fed. R. Civ. P. 55(a).  Second, after default has been entered, and the defendant fails to appear or move to set aside the default under Rule 55(c), the Court may, on plaintiff's motion, enter a default judgment against that defendant.  *Id*. r. 55(b)(2).  The Clerk entered a default against Kel-Tech on August 21, 2019.  (Certificate of Default).

The next question, before reaching liability or damages, is whether Kel-Tech's conduct is sufficient to warrant entry of a default judgment.  In determining whether to enter a default judgment, the Court is guided by the same factors that apply to a motion to set aside entry of a default.  *See Enron Oil Corp. v. Diakuhara*, 10 F.3d 90, 96 (2d Cir. 1993).  "These widely accepted factors are: (1) whether the default was willful; (2) whether setting aside the default would prejudice the adversary; and (3) whether a meritorious defense is presented."  *Id.*; *see also Mason Tenders Dist. Council Welfare Fund v. Duce Constr. Corp.*, No. 02-CV-9044, 2003 WL 1960584, at *2 (S.D.N.Y. Apr. 25, 2003).

First, Kel-Tech's failure to respond to the Complaint demonstrates its default was willful. *See, e.g.*, *Indymac Bank v. Nat'l Settlement Agency, Inc.*, No. 07-CV-6865, 2007 WL 4468652, at *1 (S.D.N.Y. Dec. 20, 2007) (finding the defendants' non-appearance and failure to respond "indicate willful conduct" and granting plaintiff's default judgment against them). Kel-Tech had sufficient notice of the present litigation, as a copy of the summons and Complaint were served via the Office of the Secretary of State of the State of New York on May 2, 2019. (Executed Summons). The motion for default judgment and supporting papers were also served via mail to Kel-Tech's last known business address. (Default J. Service; Default J. Suppl. Service). Notwithstanding this notice and service, Kel-Tech did not respond to the Complaint, did not appear, and has not in any way attempted to defend itself.

As to the second factor, Plaintiffs would be prejudiced if the motion for default judgment were denied because "[w]ithout the entry of a default judgment, Plaintiffs would be unable to recover for the claims adequately set forth in the Complaint." *Sola Franchise Corp. v. Solo Salon Studios Inc.*, No. 14-CV-946, 2015 WL 1299259, at *15 (E.D.N.Y. Mar. 23, 2015) (adopting report and recommendation); *Trs. of the Empire State Carpenters Annuity, Apprenticeship, Lab. Mgmt. Coop., Pension & Welfare Funds v. Lynnview Constr. Corp.*, No. 12-CV-5644, 2013 WL 4852312, at *7 (E.D.N.Y. Sept. 10, 2013) (adopting report and recommendation).

Third, the Court cannot conclude there is any meritorious defense to the Plaintiffs' allegations because Kel-Tech did not appear and no defense has been presented to the Court. *E.g.*, *United States v. Hemberger*, No. 11-CV-2241, 2012 WL 1657192, at *2 (E.D.N.Y. May 7, 2012); *Indymac Bank*, 2007 WL 4468652, at *1.

All three factors weigh in favor of the entry of default judgment. The Court now turns to the liability imposed, damages, and other relief to be awarded.

II.    Liability

In deciding a motion for default judgment, a court "is required to accept all of the [plaintiff]'s factual allegations as true and draw all reasonable inferences in its favor." *Finkel v. Romanowicz*, 577 F.3d 79, 84 (2d Cir. 2009). A party's default is deemed an admission of all well-pleaded allegations of liability. *See Greyhound Exhibitgroup, Inc. v. E.L.U.L. Realty Corp.*, 973 F.2d 155, 158 (2d. Cir. 1992); *Morales v. B & M Gen. Renovation Inc.*, No. 14-CV-7290, 2016 WL 1266624, at *2 (E.D.N.Y. Mar. 9, 2016), *report and recommendation adopted*, 2016 WL 1258482 (Mar. 29, 2016).

The court must then determine "whether the unchallenged facts constitute a legitimate cause of action." 10A Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 2688.1 (2020) ("Once the default is established, defendant has no further standing to contest the factual allegations of plaintiff's claim for relief. Even after default, however, it remains for the court to consider whether the unchallenged facts constitute a legitimate cause of action, since a party in default does not admit conclusions of law."); *Labarbera v. ASTC Labs. Inc.*, 752 F. Supp. 2d 263, 270 (E.D.N.Y. 2010) (adopting report and recommendation).

Plaintiffs have asserted valid causes of action under section 515 of ERISA and section 301 of LMRA.

As a threshold matter, Kel-Tech is bound by the CBA, despite it not being signed. (*See* CBA at 32; *see generally* Grancio Decl. II). Where ample evidence demonstrates that an employer manifests an intent to adopt or agree to an unsigned collective-bargaining agreement, courts have accepted the unsigned agreement as binding. *See*

*Brown v. C. Volante Corp.*, 194 F.3d 351, 355–56 (2d Cir. 1999).  Kel-Tech manifested an intent to be bound through its course of conduct by: (1) submitting monthly remittance reports for a majority of the time period at issue, all containing a clause which states that Kel-Tech "hereby ratifies and approves the terms of the [CBA]"; (2) paying the corresponding fringe benefit contributions; and (3) consenting to an audit in accordance with the CBA.  (*See* Montelle Decl. II ¶¶ 5–8, 12–13).  Courts have concluded that such conduct is sufficient to bind an employer to an unsigned collective-bargaining agreement.  *See, e.g.*, *Brown*, 194 F.3d at 353–55 (holding that an employer was bound to an unsigned collective-bargaining agreement where the employer submitted 61 remittance reports, many of which stated that they were submitted "[i]n Accordance with the terms of the standard Industry Agreement with [the union]" and where the employer consented to an audit (first alteration in original)); *Gesualdi v. Fortunata Carting Inc.*, 5 F. Supp. 3d 262, 269 (E.D.N.Y. 2014) (adopting report and recommendation) (holding employer "became bound to the terms of the 2009 CBA by its course of conduct" when it "submitted to an audit, submitted remittance reports and paid contributions to the Funds for some periods in 2010 and 2011 reflecting the rates established in the 2009 CBA").  Thus, Kel-Tech is bound by the CBA.

Plaintiffs have stated a legitimate claim under ERISA based on the CBA.  Section 515 of ERISA requires that "[e]very employer who is obligated to make contributions to a multiemployer plan under the terms . . . of a collectively bargained agreement shall . . . make such contributions."  29 U.S.C. § 1145; *see also Flanagan v. Marco Martelli Assocs., Inc.*, No. 13-CV-6023, 2015 WL 1042279, at *8 (E.D.N.Y. March 9, 2015) (adopting report and recommendation) (noting that, under section 515 of ERISA, "employers are required to pay fringe benefit contributions pursuant to an effective

collective bargaining agreement"). The trustees of a plan may, pursuant to section 502, bring an action to enforce this requirement. *See* 29 U.S.C. § 1132(a)(3); *Benson v. Brower's Moving & Storage, Inc.*, 907 F.2d 310, 313–14 (2d Cir. 1990). Kel-Tech is alleged to be an employer in an industry affecting commerce within the meaning of ERISA, and the Funds are plans as defined by ERISA. (Compl. ¶¶ 4–5).

The Trustees allege Kel-Tech failed to make required fringe benefit contributions during the period of July 1, 2013, to June 30, 2015, as indicated in the audit report completed on January 7, 2016, and as required by the CBA. (*Id.* ¶¶ 17–18; Audit Report dated Jan. 7. 2016 ("Audit Report"), attached as Ex. E to Castiglia Decl., Dkt. No. 14, at 4). These allegations, on default, are sufficient to establish ERISA liability. *See, e.g.*, *Trs. of the Loc. 813 Ins. Tr. Fund v. A.A. Danzo Sanitation, Inc.*, No. 16-CV-318, 2018 WL 4268907, at *3–4 (E.D.N.Y. Aug. 8, 2018), *report and recommendation adopted*, 2018 WL 4266038 (Sept. 5, 2018); *Sullivan v. Marble Unique Corp.*, No. 10-CV-3582, 2011 WL 5401987, at *3 (E.D.N.Y. Aug. 30, 2011) (recommending that the employer's failure to make contributions to employee-benefit funds pursuant to a collective-bargaining agreement "constitutes a violation of ERISA"), *report and recommendation adopted*, 2011 WL 5402898 (Nov. 4, 2011); *Finkel v. Omega Commc'n Servs., Inc.*, 543 F. Supp. 2d 156, 160 (E.D.N.Y. 2008) (adopting report and recommendation) ("The allegations in plaintiff's complaint establish the elements of liability required to state a claim under section 515 of ERISA . . . . Plaintiff alleges that defendant entered into an agreement with the Union under which defendant was obligated to make contributions to the ERISA Plans and that defendant failed to make such contributions.").

Plaintiffs have also alleged a valid cause of action under the LMRA. Section 301 of the LMRA provides a cause of action against an employer in an industry affecting

commerce for the "violation of contracts between an employer and a labor organization." 29 U.S.C. § 185(a). "Under Section 301 of the LMRA, an employer may be held liable for failing to pay assessments or failing to remit dues withheld from employee paychecks to the union as required by a collective bargaining agreement." *Sullivan*, 2011 WL 5401987, at *3. Kel-Tech is alleged to be an employer in an industry affecting commerce within the meaning of the LMRA, (Compl. ¶ 5), and, as noted above, Kel-Tech is bound by the CBA. The Trustees allege that Kel-Tech failed to pay dues check-offs and other assessments that it was obligated to remit pursuant to the CBA. (*See id*. ¶ 18; CBA art. IX(b); Audit Report at 4). These allegations are sufficient to establish liability under the LMRA. *See, e.g.*, *A.A. Danzo Sanitation, Inc.*, 2018 WL 4268907, at *3–4 (recommending that an employer's failure to pay dues and assessments pursuant to a collective-bargaining agreement constitutes a breach of the LMRA); *Sullivan*, 2011 WL 5401987, at *3 (same).

III.    Damages, Delinquent Contributions, Assessments, Fees and Interest

  "While a party's default is deemed to constitute a concession of all well-pleaded allegations of liability, it is not considered an admission of damages." *Greyhound Exhibitgroup,* 973 F.2d at 158. "[A]lthough the default establishes a defendant's liability, unless the amount of damages is certain, the court is required to make an independent determination of the sum to be awarded." *Griffiths v. Francillon*, No. 10-CV-3101, 2012 WL 1341077, at *1 (E.D.N.Y. Jan. 30, 2012) (quoting *Ann Taylor, Inc. v. Interstate Motor Carrier, Inc.*, No 03-CV-7502, 2004 WL 2029908, at *3 (S.D.N.Y. Sept. 13, 2004)), *report and recommendation adopted*, 2012 WL 1354481 (Apr. 13, 2012). "The court must conduct an inquiry to ascertain the amount of damages with reasonable certainty." *Joe Hand Promotions, Inc. v. El Norteno Rest. Corp.*, No. 06-

CV-1878, 2007 WL 2891016, at *2 (E.D.N.Y. Sept. 28, 2007) (adopting report and recommendation) (citing *Transatlantic Marine Claims Agency, Inc. v. Ace Shipping Corp.*, 109 F.3d 105, 111 (2d Cir. 1992)).  "Where, on a damages inquest, a plaintiff fails to demonstrate its damages to a reasonable certainty, the court should decline to award any damages even though liability has been established through default."  *Lenard v. Design Studio*, 889 F. Supp. 2d 518, 527 (S.D.N.Y. 2012) (adopting report and recommendation) (collecting cases).

Plaintiffs who establish an employer's liability under section 515 of ERISA are entitled to an award of: "1) the amount of unpaid contributions; 2) interest on the unpaid contributions; 3) liquidated damages; 4) reasonable attorney's fees and costs, and 5) such other legal and equitable relief as the court deems appropriate."  *Lanzafame v. Toquir Contracting, Inc.*, 545 F. Supp. 2d 255, 257 (E.D.N.Y. 2007) (citing 29 U.S.C. § 1132(g)(2)), *report and recommendation adopted*, 2008 U.S. Dist. LEXIS 15218 (Feb. 28, 2008).  "An award of damages is also available under LMRA for those contributions not covered by ERISA but unpaid or paid late in violation of a collective bargaining agreement . . . or other contract."  *Annuity, Welfare & Apprenticeship Skill Improvement & Safety Funds of the Int'l Union of Operating Eng'rs, Loc. 15, 15A, 15C & 15D v. A.G. Constr. Corp.*, No. 13-CV-3590, 2014 WL 354647, at *4 (E.D.N.Y. Jan. 31, 2014) (adopting report and recommendation).  "LMRA damages are limited to those permitted in the relevant CBA and trust agreements."  *Id.*

A.    Delinquent Contributions and Union Assessments

Plaintiffs seek $2,105.60 in delinquent ERISA contributions.  (Montelle Decl. I ¶ 9).  They also seek to recover union assessments in the amount of $146.57.  (*Id.*).  In support of these figures, they submitted an audit report for the period of July 1, 2013, to

June 30, 2015, attached to a declaration from Robert Castiglia, a partner at the accounting firm retained by the Trustees, Castiglia, LLP.  (*See* Castiglia Decl. ¶¶ 2, 4; Audit Report at 3).  Castiglia described how the audit was conducted, namely by "review[ing] contribution reports, individual earning records, tax returns, and W-2 forms in connection with work performed by individuals who were paid by Kel-Tech." (Castiglia Decl. ¶ 6).  The total hours were then apparently multiplied by the rates Kel-Tech was obligated to pay under the CBA.  (*Id.* ¶¶ 7–8).  The audit was served on Defendant in the course of this litigation.  (Default J. Service).

The Court has reviewed the audit and confirmed the calculations therein, namely the amounts due based on hours worked and rates provided by the CBA and Remittance Reports.  Having no basis to conclude that the underlying rates or hours worked are incorrect, the Court recommends awarding a total of $2,105.60 in unpaid contributions and $146.57 in union assessments.  *See, e.g.*, *Annuity, Welfare & Apprenticeship Skill Improvement & Safety Funds of Int'l Union of Operating Eng'rs, Loc. 15, 15A, 15C & 15D v. Coastal Envtl. Grp. Inc.*, No. 18-CV-5791, 2019 WL 5693916, at *6 (E.D.N.Y. Aug. 30, 2019) (recommending a total after "independently calculat[ing] and confirm[ing] the amounts due based on hours worked and rates provided by the Wage Scale Schedules" supplied by the plaintiffs), *report and recommendation adopted*, Order (Mar. 31, 2020); *Loc. No. 46 Metallic Lathers Union & Reinforcing Iron Workers Welfare Tr., Annuity Fund, Pension Fund, Apprenticeship Fund, Vacation Funds, Scholarship Fund & Other Funds v. Brookman Constr. Co.*, No. 12-CV-2180, 2013 WL 5304358, at *3 (E.D.N.Y. Sept. 19, 2013) (adopting report and recommendation and awarding delinquent contributions based on the submission of an affidavit from an auditor, a copy of the audit, and a copy of the collective-bargaining agreement);

*Bricklayers Ins. & Welfare Fund v. Primo Brick, Inc.*, No. 11-CV-5742, 2013 WL 2120338, at *5 (E.D.N.Y. Apr. 3, 2013) (recommending an award of unpaid contributions based on an audit that "was prepared by 'comparing gross wages in the payroll records with Form 941, WT4-B, NYS-4, W-2 totals; [and] comparing wage rates in employer's payroll records with hourly rates set forth in union wage schedules'" (quoting a factual affirmation submitted with the motion for default judgment)), *report and recommendation adopted*, 2013 WL 2120318 (May 15, 2013).

B.    Liquidated Damages

The Trustees seek $210.56 in liquidated damages, which is ten percent of $2,105.60, the amount of the delinquent ERISA contributions.  (Montelle Decl. I ¶¶ 8, 14).

"Section 502 of ERISA provides for liquidated damages in an amount equal to the greater of the interest due on the unpaid contributions, or up to twenty percent of the unpaid contributions as provided in the collective bargaining and trust agreements." *Sullivan*, 2011 WL 5401987, at *6; *see also Gesualdi v. D. Gangi Contracting Corp.*, No. 18-CV-3773, 2019 WL 1130729, at *7 (E.D.N.Y. Feb. 11, 2019), *report and recommendation adopted*, 2019 WL 1128356 (Mar. 12, 2019).  The Collection Policy provides for liquidated damages at ten percent of the amount owed.  (*See* Collection

Policy art. II, ¶ 5).  The amount of ERISA contributions owed is $2,105.60, and thus Plaintiffs are entitled to $210.56 in liquidated damages.[1]

C.   Interest on Unpaid Contributions

Plaintiffs are entitled to interest on delinquent contributions at the rate provided by the applicable employee benefit plan.  29 U.S.C. § 1132(g)(2)(B).  The Collection Policy provides that if the employer fails to pay the required contributions, the Funds may collect interest at a rate of ten percent per year.  (Collection Policy art. II, ¶ 5).  To find the total interest owed, the Court multiplies the daily interest (ten percent of the unpaid contributions divided by 365 days per year) by the number of days the contributions were delinquent.  Kel-Tech's contributions became delinquent 35 days after the close of the calendar month in which work covered by the CBA was performed.  (Decl. of Keith Loscalzo in Supp. of Default J. dated Sept. 3, 2019, Dkt. No. 12, ¶ 10; CBA art. IX, § 1(b)).  The Trustees demanded payment of delinquent contributions on February 2, 2016, (Audit Report at 1), but Kel-Tech has not made any payments (Compl. ¶ 19).

The Trustees seek interest beginning on February 4, 2014, the date Kel-Tech's contributions became delinquent.  (Audit Report at 4; Damages Calculations, attached as Ex. D to Montelle Decl. I, Dkt. No. 13).[2]  Accordingly, it is respectfully recommended

---

[1] The requested amount of $210.56 is less than interest owed on delinquent ERISA contributions.  (*See* Pls.' Mem. at 6, 8).  Although Plaintiffs would be entitled to the greater amount, they only request $210.56, and thus this Court recommends only $210.56 be granted.  29 U.S.C. § 1132(g)(2)(C); *see, e.g.*, *Coastal Envtl. Grp.*, 2019 WL 5693916, at *9 n.16 (recommending that the funds should receive liquidated damages at ten percent of the amount owed, as requested by plaintiffs and as provided by the trust agreements, notwithstanding that interest due on the unpaid contributions would be higher).

[2] The Trustees provided a chart of interest calculations through August 30, 2019.  (*See* Damages Calculations).

that the Trustees be awarded interest of $0.58 per day beginning February 4, 2014, until

final judgment is entered in a total amount to be calculated by the Clerk of the Court.

        D.     <u>Late-Payment Interest</u>

Plaintiffs also seek interest on Kel-Tech's payments that were made after the date

when the contributions were due.  Pursuant to the Collection Policy, Kel-Tech owes

interest for late contribution payments, calculated at ten percent per year from the

original due date of such payments through the date contributions were received.

(Collection Policy art. II, ¶ 5).  Plaintiffs seek an award of $782.52 in interest on late

payments and have provided satisfactory documentation to substantiate this amount.[3]

(*See* Grancio Decl. I ¶ 10; Billing Status Report dated Aug. 20, 2019, attached as Ex. I to

Grancio Decl. I, Dkt. No. 15, at 5).  Accordingly, the Court recommends awarding the

Trustees $782.52 in interest on late payment contributions.

        E.     <u>Audit Fees</u>

Plaintiffs seek $1,027 in auditor's fees, which is based on 12 hours of work

performed at a rate of $85 per hour plus $7 in travel costs.  (Castiglia Decl. ¶ 12).

"Although 29 U.S.C. § 1132(g)(2) does not expressly provide for an award of audit fees,"

courts have granted audit fees when the CBA provides for their recover or they "have

used section 1132(g)(2)(E), which provides 'for such other legal or equitable relief as the

court deems appropriate,' as a basis for awarding audit fees." *Lanzafame v. L & M*

*Larjo Co. Inc.*, No. 03-CV-3640, 2006 WL 2795348, at *8 (E.D.N.Y. Sept. 26, 2006)

(adopting report and recommendation).

---

[3] In their Complaint, Plaintiffs sought $1,529.66 for in late-payment interest.
(Compl. ¶ 33(ii)).  In the motion, Plaintiffs only requested $782.52 in late-payment
interest.  The Court only considers Plaintiffs' request in their motion.

The Collection Policy provides that Kel-Tech is liable, "in the event a legal action is commenced, all costs including, but not limited to, reasonable audit and accounting expenses." (Collection Policy art. II, ¶ 5). The Court finds the requested fees to be within the range generally awarded in ERISA cases and therefore respectfully recommends awarding the Trustees $1,027 in audit fees. *See, e.g.*, *Coastal Envtl. Grp.*, 2019 WL 5693916, at \*12 (recommending $1,268.25 in auditor's fees as "well within the range generally awarded in ERISA default judgment cases"); *Lanzafame*, 2006 WL 2795348, at \*1 (awarding $2,587.50 in audit fees).

F.    Attorney's Fees

Plaintiffs seek $5,817.00 in attorney's fees to compensate for 24.9 hours of work on the case. (Grancio Decl. I ¶ 18; Virginia & Ambinder, LLP Invoice for Professional Services dated Sept. 10, 2019 ("Invoice for Professional Services"), attached as Ex. J to Grancio Decl. I, Dkt. No. 15, at 5). Pursuant to section 502 of ERISA, where an action is brought by a fiduciary to enforce section 515 of ERISA, the court "shall award . . . reasonable attorney's fees . . . to be paid by the defendant." 29 U.S.C. § 1132(g)(2)(D). Additionally, the Collection Policy provides that an employer who fails to make timely payments of contributions is "liable . . . , in the event a legal action is commenced, [for] . . . attorneys' fees." (Collection Policy art. II, ¶ 5).

In assessing whether legal fees are reasonable, a court must determine the "presumptively reasonable fee" for an attorney's services by examining what a reasonable client would be willing to pay. *See Arbor Hill Concerned Citizens Neighborhood Ass'n v. County of Albany*, 522 F.3d 182, 183–84 (2d Cir. 2008). To calculate the presumptively reasonable fee, a court must first determine a reasonable hourly rate for the legal services performed. *Id.* The next step is to determine the

reasonableness of the hours expended by counsel.  *See, e.g.*, *LaBarbera v. Empire State Trucking, Inc.*, No. 07-CV-669, 2008 WL 746490, at *4–5 (E.D.N.Y. Feb. 26, 2007), *report and recommendation adopted*, 2008 U.S. Dist. LEXIS 21770 (Mar. 19, 2008). The number of hours spent on a lawsuit are considered unreasonable if they are "excessive, redundant, or otherwise unnecessary."  *See, e.g.*, *LaBarbera v. Frank J. Batchelder Transp. LLC*, No. 08-CV-3387, 2009 WL 240521, at *4 (E.D.N.Y. Feb. 2, 2009) (adopting report and recommendation) (quoting *Gierlinger v. Gleason*, 160 F.3d 858, 876 (2d Cir. 1998)).

As for the reasonableness of the proposed hourly rate, courts examine the experience and qualifications of counsel seeking the fee award.  The Trustees were represented by attorneys Nicole Marimon, Adrianna Grancio, and Kelly Malloy from the law firm of Virginia & Ambinder, LLP ("V&A").  (Grancio Decl. I ¶¶ 13–15).  Counsel submitted contemporaneous billing records documenting the legal services rendered by V&A for work performed, including the date of service, the amount of time during which services were provided, the name of the attorney, and a description of services performed.  (*See* Invoice of Professional Services).  The Trustees seek an award at a rate of $250 per hour for the work performed by each of the three attorneys, as well as a rate of $80 per hour for the work performed by various legal assistants.  (Grancio Decl. I ¶¶ 13–16).

Ms. Marimon is a partner and a 2014 graduate of Fordham University School of Law, and she has served as lead counsel on numerous ERISA cases.  (*Id.* ¶ 14).  Ms. Grancio is an associate and 2016 graduate of St. John's University School of Law, and she has prosecuted "numerous" ERISA cases.  (*Id.* ¶ 13).  Ms. Malloy was an associate

and 2018 graduate of Brooklyn Law School; while at V&A, she primarily practiced ERISA litigation.  (*Id.* ¶ 15).

In ERISA matters, courts in the Eastern District of New York have approved hourly rates for partners from $200 to $450 per hour, *e.g.*, *Trs. of the Ne. Carpenters Health, Pension, Annuity, Apprenticeship, & Labor Mgmt. Coop. Funds v. Northcoast Maint. Corp.*, No. 17-CV-5072, 2018 WL 2471201, at *4 (E.D.N.Y. May 4, 2018), and rates ranging from "$200 to $300 for senior associates, $100 to $200 for junior associates, and $70 to $80 for legal assistants," *Finkel v. Captre Elec. Supply Co.*, No. 14-CV-3584, 2015 WL 5316257, at *6 (E.D.N.Y. July 31, 2015), *report and recommendation adopted*, 2015 WL 5330388 (Sept. 11, 2015).  However, "courts have 'accounted for the relative simplicity of ERISA default cases by consistently approving rates that are closer to the lower end of this range.'"  *Finkel*, 2015 WL 5316257, at *6 (quoting *Trs. of the Pavers & Road Builders Dist. Council Welfare, Pension, Annuity & Apprenticeship, Skill Improvement & Safety Funds v. JREM Constr. Corp.*, No. 12-CV-3877, 2013 WL 618738, at *9 (E.D.N.Y. Jan. 28, 2013), *report and recommendation adopted*, 2013 WL 623573 (Feb. 19, 2013)).

As such, the Court finds that the partner rate for Ms. Marimon, the senior associate rate for Ms. Grancio, and the rate for V&A's legal assistants are reasonable.  *See, e.g.*, *Trs. of the Pavers & Rd. Builders Dist. Council Welfare, Pension, Annuity & Apprenticeship, Skill Improvement & Safety Funds v. Shelbourne Constr. Corp.* , No. 19-CV-2312, 2020 WL 1668041, at *8 (E.D.N.Y. Mar. 5, 2020) (approving $250 per hour for Ms. Marimon and Ms. Grancio and $80 per hour for their legal assistants), *report and recommendation adopted*, 2020 WL 1666461 (Apr. 3, 2020).

However, given Ms. Malloy's limited experience, the simplicity of ERISA default cases, and recent decisions by this Court, the Court respectfully recommends that Ms. Malloy's rate be reduced to $200 per hour. *See Finkel v. Allstate Elec. Corp.*, No. 18-CV-3798, 2020 WL 1864877, at *4 (E.D.N.Y. Apr. 14, 2020) (finding that "a lower hourly rate of $200 is appropriate" for Ms. Malloy's work as a first-year associate); *Trs. of Ne. Carpenters Health, Pension, Annuity, Apprenticeship & Labor Mgmt. Coop. Funds v. Excel Installations, LLC*, No. 19-CV-3012, 2020 WL 429135, at *5 (E.D.N.Y. Jan. 27, 2020) (adopting report and recommendation) (reducing Ms. Malloy's hourly rate to $175 per hour from the requested $225 per hour).

Turning next to the reasonableness of the time expended, according to the billing records submitted, the Trustees' attorneys and legal assistants spent 22.5 hours and 2.4 hours on the case, respectively. (*See* Invoice of Professional Services). This is within the range of hours expended in similar ERISA cases involving default judgment. *See, e.g.*, *Gesualdi v. Torretta Trucking Inc.*, No. 10-CV-1249, 2012 WL 1102803, at *9 (E.D.N.Y. Mar. 12, 2012) (finding "22.8 hours at attorney rates and 6.3 hours at paralegal rates to be reasonable" in an ERISA default judgment action (footnote omitted)), *report and recommendation adopted*, 2012 WL 1103179 (Apr. 2, 2012); *Tr. of the Pavers & Builders Dist. Council Welfare, Pension, Annuity & Apprenticeship, Skill Improvement & Safety Funds v. Base Constr. Corp.*, No. 16-CV-4068, 2017 WL 3017187, at *5 (E.D.N.Y. June 20, 2017) (recommending a reduction in in claimed attorney's fees and establishing that 22.95 hours of attorney work and 4.5 hours of paralegal work are reasonable in an ERISA default litigation), *report and recommendation adopted*, 2017 WL 3016804 (July 14, 2017)). The Court thus recommends a total of $5,607 be awarded in attorney's fees, as outlined in the chart below.

| Name | Position/Title | Rate | Adjusted Rate | No. of Hours | Amount Owed |
|------|----------------|------|---------------|--------------|-------------|
| A. Grancio | Associate | $250/hr | -- | 14.2 | $3,550 |
| N. Marimon | Partner | $250/hr | -- | 4.1 | $1,025 |
| K. Malloy | Associate | $250/hr | $200/hr | 4.2 | $840 |
| Various | Legal Assistants | $80/hr | -- | 2.4 | $192 |
| **Total:** | | | | 24.9 | $5,607 |

G.    Costs

The Trustees seek reimbursement for costs consisting of $400 in court filing fees,

$70 in service of process fees, and $6.80 in postage fees.  (*See* Grancio Decl. I ¶ 20;

Invoice of Professional Services at 5).  ERISA provides that "[a]n award of reasonable

costs is mandatory in a successful action to recover delinquent contributions."  *Finkel v.*

*Detore Elec. Constr. Co.*, No. 11-CV-0814, 2012 WL 1077796, at *12 (E.D.N.Y. Mar. 6,

2012), *report and recommendation adopted*, 2012 WL 1078470 (Mar. 30, 2012); *see*

*also* 29 U.S.C. § 1132(g)(2)(D).  Recoverable costs include "[r]easonable and identifiable

out-of-pocket disbursements ordinarily charged to clients."  *Finkel*, 2012 WL 1077796,

at *12 (alteration in original) (quoting *Trs. of the Road Carriers Loc. 707 Welfare Fund*

*v. Goldberg*, No. 08-CV-884, 2009 WL 3497493, at *10 (E.D.N.Y. Oct. 28, 2009)

(adopting report and recommendation)).  Plaintiffs may recover "[c]osts relating to

filing fees, process servers, postage, and photocopying."  *Teamsters Loc. 814 Welfare*

*Fund v. Dahill Moving & Storage Co.*, 545 F. Supp. 2d 260, 269 (E.D.N.Y. 2008).  Filing

fees are recoverable without supporting documentation if verified by the docket.  *E.g.*,

*Shalto v. Bay of Bengal Kabob Corp.*, No. 12-CV-920, 2013 WL 867420, at *2 (E.D.N.Y.

Mar. 7, 2013) (adopting a report and recommendation in part); *Philpot v. Music Times*

*LLC*, No. 16-CV-1277, 2017 WL 9538900, at *11 (S.D.N.Y. Mar. 29, 2017) (stating that

the filing fee is "a fact of which the Court can take judicial notice"), *report and recommendation adopted*, 2017 WL 1906902 (May 9, 2017).

The docket indicates the $400 filing fee was paid.  (Dkt. No. 1).  Therefore, although Plaintiffs did not submit a receipt into evidence, the filing fee should be awarded.

Process server fees are also recoverable, but they must be supported by documentation.  *See Martinez v. Alimentos Saludables Corp.*, No. 16-CV-1997, 2017 WL 5033650, at *29 (E.D.N.Y. Sept. 22, 2017) (recommending that the plaintiffs not be awarded process server fees absent supporting documentation and noting that "failure to provide adequate documentation of costs incurred will limit, or even defeat, recovery"), *report and recommendation adopted*, 2017 U.S. Dist. LEXIS 174714 (Oct. 18, 2017); *Sheldon v. Plot Commerce*, No. 15-CV-5885, 2016 WL 5107072, at *20 (E.D.N.Y. Aug. 26, 2016) (recommending the costs for serving defendant "be denied due to lack of adequate documentation"), *report and recommendation adopted*, 2016 WL 5107058 (Sept. 19, 2016).  Plaintiffs' affidavit of service reflects that the cost to serve Kel-Tech via the Secretary of State was $40.  (Executed Summons).  The billing records submitted by V&A reflect that the cost to serve Kel-Tech was $70.  (Invoice for Professional Services at 5).  In light of this conflicting evidence, this Court recommends the lower of the two amounts and thus recommends the Trustees be awarded $40 in service costs.

The Court also finds Plaintiffs' postage costs reasonable.  *See, e.g.*, *Finkel v. Robco Elec. Corp.*, No. 11-CV-2353, 2012 WL 3306963, at *13 (E.D.N.Y. Mar. 30, 2012) (recommending an award of "$28.36 for postage, photocopies and facsimiles" in ERISA default judgment case), *report and recommendation adopted*, 2012 WL 3307631 (Aug.

13, 2012); *Gesualdi v. Ava Shypula Testing & Inspection, Inc.*, No. 13-CV-1873, 2014 WL 1399417, at *8 (E.D.N.Y. Apr. 10, 2014) (adopting report and recommendation) (approving "$16.80 for postage, photocopies, and accessing the docket" in ERISA default judgment case). These costs are also supported by the record. V&A's billing records reflect that the motion was sent via certified mail and cost $6.80. (Invoice for Professional Services at 5). Other Courts in this District have relied on such records to approve similar postage costs. *E.g.*, *Base Constr. Corp.*, 2017 WL 3017187, at *5 (recommending an award in an ERISA default case which includes $7.96 in postage, supported by V&A billing records).

Therefore, the Court respectfully recommends an award of $446.80 in costs.

<u>CONCLUSION</u>

For the reasons stated, it is respectfully recommended that the Trustee's motion for a default judgment be granted in part and that judgment be entered against Kel-Tech as follows:

- $2,105.60 in delinquent contributions;

- $210.56 in liquidated damages;

- $146.57 in delinquent union assessments;

- Interest on delinquent contributions calculated by the Clerk of the Court from February 4, 2014, through the date of entry of final judgment at a rate of $0.58 per day;

- $782.52 in late-payment interest;

- $1,027.00 in audit fees and costs;

- $5,607.00 in attorney's fees; and

- $446.80 in costs.

That is, the Court recommends a total award of $10,326.05, plus interest of $0.58 per day from February 4, 2014, through the entry of final judgment.

Any objections to the Report and Recommendation above must be filed with the Clerk of the Court within 14 days of receipt of this report.  Failure to file objections within the specified time waives the right to appeal any judgment or order entered by the District Court in reliance on this Report and Recommendation.  *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b)(2); *see Caidor v. Onondaga County*, 517 F.3d 601, 604 (2d Cir. 2008) ("[F]ailure to object timely to a magistrate [judge's] report operates as a waiver of any further judicial review of the magistrate [judge's] decision.").

The Trustees are directed to serve a copy of this Report and Recommendation on Kel-Tech and file proof of such service on the record.

SO ORDERED.

*/s/ Sanket J. Bulsara* August 25, 2020
SANKET J. BULSARA
United States Magistrate Judge

Brooklyn, New York